# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | | |
|---|---|---|
| RONALD WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:10CV00034 ERW |
| | ) | |
| BEVERLY MORRISON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff (registration no. 1133426), an inmate at Northeast Correctional Center, for leave to commence this action without payment of the required filing fee [Doc. #2]. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $54.03. See 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must

assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. Id.

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $270.17, and an average monthly balance of $28.15. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $54.03, which is 20 percent of plaintiff's average monthly deposit.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact."

Neitzke v. Williams, 490 U.S. 319, 328 (1989); see Denton v. Hernandez, 504 U.S. 25, 31 (1992) (claims that are delusional or fanciful are factually frivolous.). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. Spencer v. Rhodes, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), aff'd 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." Id. at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. Id. at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." Id. The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's conclusion is the

most plausible or whether it is more likely that no misconduct occurred. Id. at 1950, 51-52.

**The Complaint**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. Named as defendants are: Beverly Morrison (doctor); Cleveland Rayford (doctor); Douglas Prudden (Warden, Northeast Correctional Center ("NECC")); Scott Lawrence (Asst. Warden, NECC); Chantay Godert (Asst, Warden, NECC); Thomas Cabrera (doctor); Gene Roxas (doctor); Tammy Harr (nurse); Jill Perkins (nurse); Dennece Ward (nurse); Unknown Nalagan[1] (doctor); Jewel Cofield; Michael Sands (doctor); Elizabeth Conley (doctor); Gary Campbell (doctor); Physicians Purchasing Group, Inc., George Lombardi (Director, Missouri Department of Corrections); Missouri Department of Corrections ("MDOC"); Mike Kemna (Zone Director, MDOC); Correctional Medical Services, Inc.; and John Does 1-10. Plaintiff sues defendants in both their individual and official capacities.

Plaintiff alleges that he was incarcerated at Farmington Correctional Center ("FCC") during or before 2008. Plaintiff says that while he was at FCC he was under the medical care of defendants Morrison and Rayford, both of whom work for CMS.

---

[1]Nalagan is not listed on the Court's docket as a defendant. This is an error, and the Court will order the Clerk to add Nalagan to this case.

Plaintiff claims that Morrison and Rayford, on several occasions, gave him Prostate-Specific Antigen ("PSA") tests. Plaintiff alleges that those tests revealed that he had "elevated PSA levels," which is indicative of cancer. Plaintiff maintains, however, that Morrison and Rayford hid the results of those tests from him, knowing that he required urgent treatment. Plaintiff avers that CMS has a policy of not treating serious illnesses, such as the one he had, and that CMS relays this policy to its subcontractor physicians. Plaintiff says that Morrison and Rayford were following this policy when they hid his elevated PSA levels from him.

Plaintiff states that in 2008 he was transferred to NECC. Plaintiff maintains that MDOC has placed electric "death fences" around NECC. Plaintiff avers that these death fences "emit an electromagnetic radiation field," which is harmful to humans. Plaintiff alleges that inmates and staff have medical problems as a result of exposure to the radiation emitted by death fences, including "severely disrupted sleep patterns, chromosome damage, infertility . . . alterations in DNA . . . depression, paranoia . . . increased prostrate and other forms of cancer . . . sudden death syndrome" and various other ailments.

Plaintiff alleges that upon his arrival at NECC he requested, and was given, several PSA tests. Plaintiff states that defendants Roxas, Cabrera, Nalagan, Harr,

Perkins, Conley, Sands, Cofield, and Campbell "hid the test results or otherwise refused to diagnose this serious medical condition due to the costs of the treatment."

Plaintiff claims that by 2009 he was "feeling the deleterious, ultrahazardous effects of the [death] fence." Plaintiff says he sought medical attention for these complaints but that nobody told him about the dangers of the death fences. Plaintiff states that he requested more PSA tests and that he requested "genetic tests to pinpoint the origin of cause for the severe deterioration in his health and the resulting symptoms."

Plaintiff alleges that he had untreated prostate cancer that became so severe he had to have a "radical prostate removal or die." After the surgery, plaintiff says, defendants did not allow him to follow up with his specialists, which caused him pain.

Plaintiff claims that he begged defendants Lawrence, Lombardi, Kemna, Godert, and Prudden to take down the death fences so that they would stop causing people to have cancer but that defendants did not do so.

## Discussion

The nature of the allegations regarding death fences, electromagnetic radiation fields, and the effects of the radiation suggests that the complaint is fantastic or delusional and, thus, factually frivolous. See Denton, 504 U.S. at 33. Additionally, Ashcroft instructs the Court to use its "experience and common sense" to determine

whether plaintiff's conclusions plausibly suggest an entitlement to relief, which must be more than a "mere possibility of misconduct." Aschroft, 129 S. Ct. at 1951-52. Many of the allegations in the complaint do not rise to the level of plausibility required to state a claim for relief under Ashcroft. However, at the core of plaintiff's complaint lies a serious claim of undiagnosed cancer and emergency surgery that should be allowed to proceed beyond initial review.

The Court finds plaintiff's claims about the death fences to be delusional, and the Court will dismiss these claims as factually frivolous. Plaintiff's claims against defendants MDOC, Prudden, Lawrence, Godert, Lombardi, and Kemna stem solely from the existence of these fences, and these defendants will, therefore, be dismissed from the complaint.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); see also Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege that defendant was personally involved in or directly responsible for the incidents that injured plaintiff); Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits). In the instant action, plaintiff has not set forth any facts indicating that defendants Physicians Purchasing Group, Inc., or John Does 1-10 in any way involved

in the alleged violations of his rights. And plaintiff's allegations against those CMS defendants who were not directly involved in his health care decisions, such as Cofield, Conley, Sands, and Campbell, do not show that they were directly involved in or personally responsible for the alleged violations of his constitutional rights. As a result, the complaint fails to state a claim upon which relief can be granted as to these defendants.

Plaintiff's claims against defendants Morrison and Rayford, who were his treating physicians at FCC, are too remote from his allegations regarding his surgery to state a plausible claim for relief.

The Court will permit the claims against the medical personnel at NECC and against CMS to proceed beyond these initial proceedings. As a result, the Court will order defendants CMS, Cabrera, Roxas, Harr, Perkins, Ward, and Nalagan to respond to the allegations in the complaint.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motions to proceed in forma pauperis [Doc. #2 and #4] are **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $54.03 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it:

(1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that if plaintiff fails to pay the initial partial filing fee within thirty (30) days of the date of this Order, then this case will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that the Clerk shall add defendant Unknown Nalagan, M.D., to this action.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to defendants Correctional Medical Services, Cabrera, Roxas, Harr, Perkins, Ward, and Nalagan.

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), defendants Correctional Medical Services, Cabrera, Roxas, Harr, Perkins, Ward, and Nalagan shall reply to plaintiff's claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to defendants Morrison, Rayford, Prudden, Lawrence, Godert, Cofield, Sands, Conley, Campbell, Physicians Purchasing Group, Inc., Lombardi, Missouri Department of Corrections, Kemna, and John Does 1-10

because, as to these defendants, the complaint is frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that this case is assigned to Track 5B: Prisoner Standard.

An appropriate Order of Partial Dismissal shall accompany this Memorandum and Order.

So Ordered this 20th day of August, 2010.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE