UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| RONALD WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:10CV00034 ERW |
| | ) | |
| THOMAS CABRERA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff Ronald Williams' Motion To Reconsider Order Dismissing Defendants Conley, Cofield, Sands, Campbell, Physicians Purchasing Group, Inc., Morrison, Rayford, Prudden, Lawrence, Godert, Kemna, Missouri Department of Corrections, and John Does 1 through 10 [doc. #16].

## I.   PROCEDURAL BACKGROUND

This litigation arises out of injuries and medical problems Plaintiff Ronald Williams ("Plaintiff") allegedly sustained while a prisoner in the custody of the Missouri Department of Corrections ("MODOC"), at the Farmington Correctional Center ("FCC") and the Northeast Correctional Center ("NECC").  In his Complaint [doc. #1], Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of his constitutional rights against various FCC and NECC personnel: Dr. Beverly Morrison ("Morrison"), Dr. Cleveland Rayford ("Rayford"), NECC warden Douglas Prudden ("Prudden"), NECC assistant warden Scott Lawrence ("Lawrence"), NECC assistant warden Chantay Godert ("Godert"), Dr. Thomas Cabrera ("Cabrera"), Dr. Gene Roxas ("Roxas"), nurse Tammy Harr ("Harr"), nurse Jill Perkins ("Perkins"), nurse Dennece Ward ("Warden"), Dr. Unknown Nalagan ("Nalagan"), Correctional Medical Services, Inc.

administrator Jewel Cofield ("Cofield), Dr. Michael Sands ("Sands"), Dr. Elizabeth Conley ("Conley"), Dr. Gary Campbell ("Campbell"), Physicians Purchasing Group, Inc. ("PPG"), MODOC director George Lombardi ("Lombardi"), MODOC, MODOC zone director Mike Kemna ("Kemna"), Correctional Medical Services, Inc. ("CMS"), and John Does 1-10.

Plaintiff's claims are premised on allegedly substandard medical treatment he received at the FCC and NECC for prostate cancer, and on MODOC's installation of 70,000-volt electric fences around the perimeter of the NECC, which according to Plaintiff caused or contributed to his medical problems due to the electromagnetic radiation fields they emit. Based on these alleged events and conditions, Plaintiff asserts claims against Defendants, in various configurations, for medical negligence, for violations of his Eighth Amendment rights through deliberate indifference to his serious medical needs, for violations of his Eighth Amendment rights related to the conditions of his confinement, and for permanent injunctive relief prohibiting further instances of these alleged constitutional violations.

In its August 20, 2010 Memorandum and Order [doc. #7], the Court dismissed several of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2)(B). Under that sub-section, a court may dismiss a claim filed *in forma pauperis* if the court finds that the claim is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant immune from such relief. Applying the statute to Plaintiffs' Complaint, the Court concluded that Plaintiff's allegations concerning the electric fences at the NECC were frivolous and therefore dismissed his claims against MODOC, Prudden, Lawrence, Godert, Lombardi, and Kemna, because his allegations against those parties all related solely to the fences. The Court also dismissed Plaintiffs' claims against PPG, John Does 1-10, Cofield, Conley, Sands, and Campbell on grounds that Plaintiff had failed to state viable claims against them, given the

2

absence of any allegations that these parties were directly involved in or personally responsible for the alleged violations of Plaintiff's constitutional rights. Lastly, the Court dismissed Plaintiff's claims against Morrison and Rayford, his treating physicians at FCC during or prior to 2008, for failure to state a claim, finding that the allegations concerning these parties were "too remote from his allegations regarding his [subsequent prostate] surgery to state a plausible claim for relief."

In this Motion, Plaintiff asks the Court to reconsider its dismissal of these claims and to transfer this case from the Northern Division back to the Eastern Division of the Eastern District of Missouri.

## II.     LEGAL STANDARD

"Motions for reconsideration are nothing more than Rule 60(b) motions when directed at non-final orders." *Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006) (internal quotations and citations omitted). Rule 60(b) provides that a court may reconsider a prior ruling for one of the following reasons:

>   (1) mistake, inadvertence, surprise, or excusable neglect;
>
>   (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
>   (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
>   (4) the judgment is void;
>
>   (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
>   (6) any other reason that justifies relief.

Rule 60(b) relief is an "extraordinary remedy" that is justified only in "exceptional circumstances," *Prudential Ins. Co. of America v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 903 (8th Cir. 2005), and "[e]xceptional circumstances are not present every time a party is subject to potentially unfavorable consequences as a result of an adverse judgment properly arrived at." *Atkinson v. Prudential Prop. Co.*, 43 F.3d 367, 373 (8th Cir. 1994) (internal quotations omitted). In the context of a motion under Rule 60(b)(6) – the catch-all provision applicable to Plaintiffs' Motion, given that absence of any allegations of newly-discovered evidence or other applicable grounds for relief – relief will only be granted where the "exceptional circumstances have denied the moving party a full and fair opportunity to litigate his claim and have prevented the moving party from receiving adequate redress." *See Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir. 2005). The Court construes Plaintiff's *pro se* Motion liberally. *See White v. Kautzky*, 494 F.3d 677, 680 n.1 (8th Cir. 2007).

## III. DISCUSSION

In his Motion, Plaintiff contends (A) that his claims against Defendants MODOC, Prudden, Lawrence, Godert, Lombardi, and Kemna were improperly dismissed as frivolous; (B) that his claims against Morrison and Rayford were improperly dismissed for failure to state a claim; and (C) that the Court erred in transferring his case to the Northern Division of the Eastern District of Missouri.[1] The Court considers these issues in turn.

---

[1] Plaintiff's Motion is titled as if it also seeks reconsideration of the dismissal of claims against certain other former Defendants, but these are the only arguments in favor of reconsideration presented in the Motion.

### A. Dismissal of Claims against Defendants MODOC, Prudden, Lawrence, Godert, Lombardi, and Kemna

Plaintiff asks the Court to reconsider its dismissal of his claims concerning the electric fences at NECC, arguing that the Court was "seemingly acting as an advocate" for Defendants when it found his allegations to be frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). Plaintiff also appears to assert that his Complaint contains additional allegations that would support viable claims against these Defendants.

The term "frivolous," as used in § 1915, "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Thus, "the statute accords judges . . . the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual allegations are clearly baseless." *Id.* at 327. This necessarily includes "claims of infringement of a legal interest which clearly does not exist," such as "claims describing fantastic or delusional scenarios." *Id.* at 327-28. As a result, an action may be dismissed as factually frivolous if the allegations "rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Plaintiff's allegations that electromagnetic radiation from the electric fences at NECC caused or contributed to his cancer were properly dismissed as frivolous under this standard. Plaintiff claims that the dangers posed by electromagnetic radiation from electric fences are "well defined in existing precedent" under the Eighth Amendment, but the two cases he cites in support of his argument do not suggest that the Court's conclusion was erroneous, much less a manifest error of law. *Williams v. Jackson*, 600 F.3d 1007 (8th Cir. 2010) addresses the potential dangers posed by a germicide ultraviolet radiation lamp, used for the treatment of a prisoner's

tuberculosis, where the defendant corrections officers were alleged to have intentionally removed a protective shield designed to protect against the ultraviolet radiation, *see id.* at 1010-11; there is no discussion of electric fences or of any alleged dangerousness of electromagnetic radiation emitting from such fences in that case. *Wisconsin v. Weinberger*, 578 F. Supp. 1327 (W.D. Wis. 1984), *rev'd*, 736 F.2d 438 (7th Cir. 1984), does to some extent concern electromagnetic radiation – it considers a challenge to the United States Navy's expansion of an extremely low frequency submarine communication facility, on the ground that there had not been sufficient research into the environmental effects of the electromagnetic radiation produced by the expanded facility, *see id.* at 1332 – but it neither considered the effects of radiation from electric fences nor contained any factual findings that electromagnetic radiation was necessarily dangerous. Furthermore, on appeal, the Seventh Circuit identified numerous shortcomings of the studies offered in the case suggesting that such radiation might be dangerous. 745 F.2d 412, 420-24 (7th Cir. 1984).

That said, the Court did err in stating that Plaintiff's claims against these Defendants must be dismissed because they "stem solely from the existence of these fences," given that Plaintiff did allege in his Count Five that these Defendants (with exception of MODOC) were also complicit in the tacit authorization of his inadequate medical care, and in his Count Six that they were deliberately indifferent to his inadequate medical care. This error was harmless, however, because these claims may alternatively be dismissed for failure to state a claim under § 1915(e)(2)(B)(ii). "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Plaintiff's Complaint includes only general allegations that he informed these Defendants of his medical care and that they chose to do nothing, and these allegations are insufficient to support

6

claims for relief because they are merely a conclusory recitation of the actual knowledge element of his claims. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief.). The Court therefore declines to reinstate these claims.

In sum, then, Plaintiff's Motion does not demonstrate any manifest error of law in the Court's dismissal of his claims against Defendants MODOC, Prudden, Lawrence, Godert, Lombardi, and Kemna. His allegations concerning the electric fences at NECC were properly dismissed as frivolous, and his remaining allegations against these Defendants are conclusory and therefore insufficient to support viable claims for relief.

### B. Dismissal of Claims against Morrison and Rayford

Plaintiff alleges that Morrison and Rayford, his treating physicians at FCC, concealed from him results of Prostage-Specific Antigen tests ("PSA tests") that indicated he was developing prostate cancer. Plaintiff attributes this to a CMS policy against disclosing test results to avoid expensive treatment, and he alleges that the delay in treatment allowed his cancer to spread, requiring him to undergo "radical" prostate surgery. The Court dismissed these claims for failure to state a claim, finding that these allegations were "too remote" from his allegations concerning his subsequent prostate surgery, and Plaintiff urges that this finding was in error.

The Court agrees with Plaintiff that these claims should not have been dismissed. Plaintiff correctly points out that he alleges that the tests by Morrison and Rayford "occurred within about a year or a little more prior to the radical prostate surgery." Additionally, Plaintiff alleges that the tests showed his developing cancer, and that Morrison and Rayford were deliberately indifferent to his serious medical need for treatment. Drawing all factual inferences in the light most favorable to Plaintiff, his allegations suggest that Morrison and Rayford

7

provided him with inadequate medical care, allowing his cancer to develop to a more serious stage that necessitated surgery, and these allegations are sufficient to support claims for relief against these Defendants. The Court will therefore reinstate Plaintiff's claims against Morrison and Rayford.

### C. Transfer to Northern Division

Plaintiff argues, for reasons that are unclear, that the Court should transfer this case from the Northern Division of the Eastern District of Missouri to the Eastern Division, and this argument will be rejected. This case is properly docketed in the Northern Division in Hannibal, Missouri, based on the respective residences of the Defendants, and the Court declines to exercise its discretion to transfer the case to the Eastern Division, given that the NECC – where Plaintiff resides and where the majority of events at issue took place – is closer to the Northern Division in Hannibal than to the Eastern Division in St. Louis. *See* 28 U.S.C. § 1404; E.D. Mo. Local Rule 3-2.07(B), (D).

### IV. CONCLUSION

Plaintiff's Motion will be granted in part and denied in part. The Court declines to reinstate Plaintiff's claims against Defendants MODOC, Prudden, Lawrence, Godert, Lombardi, and Kemna, because those claims were based on allegations that are either frivolous or insufficient to state claims for relief. The Court does find, however, that Plaintiff alleged colorable claims against Defendants Morrison and Rayford, and accordingly those claims will be reinstated. Lastly, the Court rejects Plaintiff's argument that this case should be transferred to the Eastern Division of the Eastern District of Missouri.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion To Reconsider Order Dismissing Defendants Conley, Cofield, Sands, Campbell, Physicians Purchasing Group, Inc., Morrison, Rayford, Prudden, Lawrence, Godert, Kemna, Missouri Department of Corrections, and John Does 1 through 10 [doc. #16] is **GRANTED, in part** and **DENIED, in part**. Plaintiff's Motion is granted to the extent he seeks reinstatement of his claims against Defendants Morrison and Rayford, and is otherwise denied.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the Complaint [doc. #1] as to Defendants Morrison and Rayford.

Dated this 17th Day of June, 2011.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE