UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| RONALD WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:10CV00034 ERW |
| ) | |
| BEVERLY MORRISON, M.D., et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants Dr. Beverly Morrison, Corizon (formerly Correctional Medical Services, "CMS"), Dr. Cleveland Rayford, Dr. Thomas Cabrera, Dr. Gene Roxas, Dr. Marcos Nalagan, Tammy Harr, R.N., Jill Perkins, R.N., and Dennece Ward, R.N. (collectively, "Defendants") Motion for Summary Judgment [ECF No. 61].[1]

### I.     FACTUAL AND PROCEDURAL BACKGROUND

The following fact statement is a recitation of undisputed facts taken from Defendants' Statement of Uncontroverted Material Facts [ECF No. 63], Plaintiff Ronald Williams's Motion for Summary Judgement [ECF No. 69], and Plaintiff's Attachment to Plaintiff's Motion for Summary Judgement [ECF No. 68], viewed in the light most favorable to Plaintiff, the nonmoving party. *Nelson v. Correctional Med. Servs.*, 583 F.3d 522, 525 (8th Cir. 2009). Pro se pleadings are held to a less stringent standard than those pleadings filed by counsel. See *Walker v. Reed*, 104 F.3d 156, 157 (8th Cir. 1997). The Court broadly construes and affords a liberal construction to pro se

---

[1] Plaintiff Ronald Williams's response is entitled "Motion for Summary Judgement." ECF No. 69. Plaintiff missed the dispositive motion deadline of February 1, 2011. *See* ECF No. 59 (setting summary judgment filing deadline). On February 16, 2012, the Court granted Plaintiff leave to file his response to Defendants' motion for summary judgment. Therefore, the Court treats Plaintiff's "Motion for Summary Judgement" as a response to Defendants' motion.

pleadings. *Johnson v. Arden*, 614 F.3d 785, 798 (8th Cir. 2010). Nevertheless, Plaintiff did not file a statement of uncontroverted material facts, in contravention of Local Rule 4.01(E). Even construing the facts contained within Plaintiff's papers as broadly as possible, Plaintiff did not dispute any of the assertions in Respondent's Statement of Uncontroverted Material Facts. All facts not specifically disputed by Plaintiff are deemed admitted by the Court. Fed. R. Civ. P. 56(e)(2); E.D.Mo. L.R. 4.01(E).

This litigation arises out of the medical treatment, or lack thereof, that Plaintiff received while incarcerated at Farmington Correctional Center (FCC) located in Farmington, Missouri, and Northeast Correctional Center (NECC) located in Bowling Green, Missouri. Plaintiff brought suit against Defendants under 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his medical needs and this deliberate indifference violated his constitutional rights [ECF No. 1]. In his complaint, Plaintiff avers two categories of claims -- claims regarding the treatment of his prostate cancer and claims regarding alleged electromagnetic fields created by high-voltage electronic security fences, so-called "death fences."[2] Regarding the claims of the treatment of his prostrate cancer, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs by ignoring medical complaints or symptoms, by delaying care, and by denying referrals to medical specialists. He also alleges that Corizon has a policy or custom of denying access to expensive medical procedures through a systematic refusal to diagnose serious illnesses in order to save the facility money.

---

[2] On August 2, 2010, the Court dismissed Plaintiff's claims about death fences as factually frivolous. ECF No. 7 at 7 (dismissing count VII of the complaint [ECF No. 1]). The Court also dismissed all claims against certain defendants because the allegations against them "stem solely from the existence of these fences." *Id*. Therefore, count VI was also dismissed. In addition, all claims were dismissed against Dr. Morrison and Dr. Rayford because those claims "are too remote from [Plaintiff's] allegations regarding his surgery to state a plausible claim for relief." *Id*. at 8. Nevertheless, Drs. Morrison and Rayford joined this Motion.

While at the FCC, Plaintiff was under the care of Dr. Morrison and Dr. Rayford. Plaintiff received prostate-specific antigen (PSA) tests[3] in 2006 and 2007. His PSA levels were within the normal range. During his confinement at the FCC, Plaintiff had annual physicals and treatment for blood in urine and kidney stones.

In 2008, Plaintiff was transferred to the NECC. In April 17, 2009, he was examined by Dr. Roxas. Plaintiff complained of frequent urination and decreased urine flow. Dr. Roxas recommended that Plaintiff have an additional PSA test, which Plaintiff accepted, and a digital rectal exam, which he declined. Because the test results indicated high PSA levels, Dr. Roxas referred Plaintiff to a urologist. The referral was approved on May 4, 2009.

Plaintiff saw a urologist on May 19, 2009. The urologist performed an ultrasound and a 12-core biopsy, which revealed the presence of carcinoma in eleven of the cores. The urologist needed to wait on a pathology report in order to determine a course of treatment.

After the biopsy, Plaintiff was admitted to the temporary care unit at the NECC. Dr. Cabrera performed a follow-up exam on Plaintiff. At that time, Plaintiff was not in pain. He returned to the general housing unit on May 20, 2009.

On June 1, 2009, Dr. Roxas requested a bone scan and a CT scan of Plaintiff's pelvis. Dr. Roxas also requested a follow-up appointment with the urologist. All requests were approved and, on June 15, 2009, Plaintiff underwent the CT scan and bone scan. The CT scan revealed that the cancer had not metastasized to bone, that his lymph nodes were normal, and that his prostate was not enlarged. The bone scan did not reveal any additional issues.

---

[3] Elevated PSA levels may indicate prostate cancer or other ailments of the prostate.

Plaintiff had an appointment with the urologist in early July 2009. At the appointment, the urologist discussed all of the test results with Plaintiff. The urologist explained that the cancer had not spread and was localized. He recommended a radical prostatectomy, in which the prostate and surrounding tissue is removed. After the urologist appointment, Dr. Roxas requested approval for the urologist to perform the radical retropubic prostatectomy. The surgery was approved on July 9, 2009.

On August 3, 2009, Plaintiff underwent the prostatectomy. In order to receive post-operative care, Plaintiff remained in the NECC's medical unit until August 10, 2009. Dr. Roxas requested a follow-up urologist appointment, which was approved.

The follow-up examination was on August 28, 2009. Plaintiff's condition was "pretty good." The urologist recommended a second post-operative examination in four weeks, which was approved. On September 25, 2009, Plaintiff had his second post-operative examination. The urologist opined that Plaintiff was "doing well." The urologist recommended a third post-operative examination in two to four months, which was approved. On November 19, 2009, Plaintiff had his third post-operative examination. The urologist stated that Plaintiff's PSA levels were non-measurable. He noted that Plaintiff had stress incontinence and urge incontinence and could not have an erection. The urologist suggested that Plaintiff may need penile rehab to remedy his erectile dysfunction. The urologist advised Plaintiff that it looked like he was cured of cancer. The urologist requested a follow-up appointment in six months.

On May 26, 2010, Plaintiff visited Dr. Cabrera for treatment of his post-operative side effects, incontinence and erectile dysfunction.[4] Plaintiff requested a follow-up with the urologist. Dr. Cabrera requested a follow-up with the urologist, which was approved.

---

[4] On May 13, 2010, Plaintiff filed this lawsuit.

Plaintiff was examined by the urologist on June 18, 2010. His PSA level was low and there was no evidence of cancer. The urologist recommended appointments every six months for the first five years after the surgery. The urologist also suggested that Plaintiff could benefit from penile rehabilitation.

Because the urologist suggested follow-up appointments, Dr. Roxas requested a six-month follow-up urologist appointment for Plaintiff, which was approved. Plaintiff saw a different urologist from the same practice group in December 2010. His PSA level was "great at less than 0.04," his incontinence was minimal, and his "erectile dysfunction [was] mild." ECF No. 64-3 at 1015. The urologist suggested Plaintiff take Viagra once he is discharged from custody to ease his erectile dysfunction. The urologist recommended a follow-up appointment in six months.

On January 31, 2011, Plaintiff had blood drawn to test his PSA level. It was .096 ng/mL. His PSA level was checked again on April 14, 2011. His PSA level was .10 ng/mL. Because Plaintiff's PSA level was rising, Dr. Cabrera requested a urologist appointment for Plaintiff, which was approved. Plaintiff saw the urologist on May 18, 2011. The urologist reported that Plaintiff's prostate cancer was "doing well" and recommended a follow-up examination in four months.

After a extensive discovery period, the remaining Defendants now move for summary judgment on all remaining counts.

## II. SUMMARY JUDGMENT STANDARD

A court shall grant a motion for summary judgment only if the moving party shows that "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). The moving party must make a showing to the court that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden shifts to the non-moving party to set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 250. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.* However, "[i]f a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purpose of the motion[.]" Fed. R. Civ. P. 56(e)(2); *see also* E.D.Mo. L.R. 4.01(E).

## III. DISCUSSION

Defendants argue that they are entitled to summary judgment because Plaintiff has not presented a genuine dispute of material fact that Defendants acted with deliberate indifference toward his serious medical needs in violation of Plaintiff's constitutional rights. Defendants also contend that as a matter of law, Corizon (formerly CMS) is entitled to summary judgment because Plaintiff has failed to state a claim against Corizon.

### A. *Deliberate Indifference (Counts I, II, III, IV, and V)*

Defendants contend that Plaintiff has not presented a genuine dispute of material fact that they acted with deliberate indifference toward Plaintiff's serious medical needs in violation of his Eighth Amendment rights. Specifically, Defendants assert that Plaintiff has failed to adduce any evidence that failed to diagnose or treat his prostate cancer in a timely manner.

Title 42 United States Code Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

To state a cognizable claim under § 1983, a plaintiff's complaint must allege that the conduct of a defendant acting under color of state law deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Walker*, 104 F.3d at 157. In counts I, II, III, IV, and V[5] of the complaint, Plaintiff alleges that his treating physicians and nurses hid test results, refused to diagnose, and refused to treat his prostate cancer in order minimize treatment costs thereby violating his constitutional rights through deliberate indifference to his serious medical needs.

"A prison official's deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment." *Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."). "A prima facie case alleging deliberate indifference requires the inmate-plaintiff to demonstrate that she suffered from an objectively serious medical need and the 'prison officials actually knew of but deliberately disregarded' that need." *Popoalii*, 512 F.3d at 499 (quoting *Alberson v. Norris*, 458 F.3d 762, 765-66 (8th Cir. 2006)).

To succeed on a claim of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Id.* (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). Deliberate indifference, "akin to criminal recklessness," demands more

---

[5] Counts II and IV are entitled "Medical Negligence." Medical negligence or medical malpractice alone are not a cognizable constitutional claims. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Popoalii, 512 F.3d at 499. Therefore, the Court liberally construes these claims as additional deliberate indifference counts.

than negligent misconduct. *Id*. The physician or prison official must disregard a known risk to the inmate's health. *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). "Intentional delay in providing medical treatment shows deliberate disregard if a reasonable person would know that the inmate requires medical attention or the actions of the officers are so dangerous that a knowledge of the risk may be presumed." *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009) (quoting *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)).

Neither party disputes that prostate cancer presents a serious medical need—that is, an ailment that is either diagnosed by a physician, *Id*. at 982, or, "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Vaughn v. Greene County, Ark.*, 438 F.3d 845, 851 (8th Cir. 2006). At issue is whether the medical attention and treatment that Plaintiff did or did not receive rises to the level of deliberate indifference.

Viewing the evidence in the light most favorable to Plaintiff, Defendants have established that no dispute of material fact exists on the prong that Defendants disregarded a known medical risk in their treatment of Plaintiff's prostate cancer. In addition, Plaintiff has failed to put forth specific facts showing a genuine dispute of material facts exists.[6] The undisputed facts show that the treating physicians and nurses all recognized the seriousness of Plaintiff's symptoms, conducted the appropriate testing, and sought additional expertise when necessary. Plaintiff's medical records, the content which is not disputed, illustrate that Plaintiff received substantial and thorough health care. The records show little to no delay between a doctor requesting a referral and the management authorizing the referral. The delays between appointments were reasonable. Plaintiff has provided

---

[6] Much of Plaintiff's responsive papers discuss the dismissed claims relating to "death fences." See ECF No. 69 at 4-5, 8-10.

no evidence contradicting this undisputed evidence that the care provided by Defendants was deliberately indifferent to his medical needs.

Plaintiff reports experiencing erectile dysfunction and incontinence as a side effect of the prostatectomy, which the urologist deemed minor. Although unfortunate, these side effects that were the result of timely and appropriate medical treatment do not evince that Defendants deliberately disregarded Plaintiff's prostate cancer and thus, do not constitute a deprivation of Plaintiff's constitutional rights.

Because no genuine dispute of material fact exists on whether Defendants deliberately disregarded Plaintiff's prostate cancer, the Court will grant summary judgment in favor of Defendants on the deliberate indifference counts.

### B. *Custom or Policy Allegation (Count VIII)*

Plaintiff alleges that Defendant Corizon, the Missouri Department of Corrections's healthcare services provider, has a policy that encourages physicians "to refuse or intentionally fail to diagnose serious and expensive medical needs of their patients" to minimize costs. Defendants argue that they are entitled to summary judgment on this issue because Plaintiff has failed to plead or present any evidence of an material issue of fact as to Corizon's liability.

A corporation acting under color of state law may be liable only if policy, custom, or action by those who represent official policy inflicts injury actionable under § 1983. *Burke v. N.D. Dep't of Corrections & Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002) (per curiam). Plaintiff has only made bald assertions about this cost-saving policy and has provided no evidence that this policy exists. Moreover, the undisputed evidence of his comprehensive treatment directly contradicts the existence of the alleged policy. Therefore, summary judgment will be granted in Defendants' favor on this issue.

**IV. CONCLUSION**

Defendants' motion for summary judgment will be granted. The undisputed facts establish that Defendants were not deliberately indifferent to Plaintiff's medical needs. The undisputed facts also establish that Plaintiff has failed to adduce any evidence of a unconstitutional cost-saving policy. Therefore, Defendants are entitled to judgment as a matter of law on all remaining counts.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [ECF No. 61] is **GRANTED**.

Dated this  10th  day of August, 2012.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE